UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMANDA MAROBELLA,

                              Plaintiff,

v.

                                                            5:15-CV-00843
                                                            (MAD/TWD)

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

THE LAW OFFICES OF STEVEN R. DOLSON, PLLC    STEVEN R. DOLSON, ESQ.
*Counsel for Plaintiff*
126 N. Salina Street, 3rd Floor
Syracuse, New York 13202


HON. RICHARD S. HARTUNIAN                    SERGEI ADEN, ESQ.
U.S. Attorney for the                        Special Assistant U.S. Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207


OFFICE OF GENERAL COUNSEL                     STEPHEN P. CONTE, ESQ.
Social Security Administration                Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

        This matter was referred to the undersigned for report and recommendation by the

Honorable Mae D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b)

(2013) and Northern District of New York Local Rule 72.3(d). This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral

argument was not heard. For the reasons discussed below, the Court recommends that this case

be remanded for further administrative proceedings.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently thirty-three years old with a birth date of September 11, 1982.

(Administrative Transcript at 133.[1]) She completed ninth grade before leaving school and

obtaining her GED. (T. at 31-32.) Plaintiff has a driver's license. (T. at 34.) Her last

employment was in 2011. (T. at 238.) She worked as a cashier and stocker at Big Lots in

Mattydale, New York. *Id.* Plaintiff is still technically employed by Big Lots but has not worked

there since July 2012, due to her alleged back problems. (T. at 37-38.) Prior to working at Big

Lots, Plaintiff cycled through a variety of jobs which included: mail handler at the Post Office,

waitress at Applebee's, cashier at Dunkin' Donuts, and stocker at Sunoco Gas Station. (T. at 36,

253.) Plaintiff alleges disability due to anxiety and back pain. (T. at 170.)

According to Plaintiff, she had a sudden onset of lower back pain in April 2012, while

working at Big Lots. (T. at 361.) When describing the pain, Plaintiff indicated it was "an

achiness across the low back region that radiates into the buttocks and low back, posterior thighs,

to her knee level." *Id.* Prolonged sitting and standing were named as aggravating factors of her

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth herein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

pain.  *Id*.  A magnetic resonance imaging ("MRI"), performed on August 13, 2012, by Syracuse

Orthopedic Specialists ("SOS"), indicated disc degeneration at "L5/S1" with a Grade 1

spondylolisthesis and facet changes, but otherwise no evidence of significant spinal stenosis.  (T.

at 277, 361.)  Plaintiff was treated for her lower back pain at SOS in August 2012, before being

referred to pain specialist Denny Battista, D.O. ("Dr. Battista").  (T. at 38, 271-78.)  Plaintiff was

treated by Dr. Battista from August 2012, through July 2013.  (T. at 361, 377.)  She underwent

both epidural and steroid injections as well as two sessions of physical therapy, but obtained

limited to no relief from either.  (T. at 271, 377.)  Dr. Battista then referred Plaintiff to Robert

Nolan, M.D. ("Dr. Nolan") for a surgical consultation.  (T. at 38, 377.)  She had her initial

consultation with Dr. Nolan on September 26, 2013.  (T. at 421.)  Plaintiff then underwent spinal

surgery, performed by Dr. Nolan, on December 17, 2013.  (T. 424.)

   Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on

August 20, 2012, alleging disability as of July 30, 2012.  (T. at 131, 166.)  Both applications

were initially denied on October 24, 2012.  (T. at 77.)  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ") on November 8, 2012.  (T. at 87.)  The hearing was held

before ALJ Patrick Flanagan on October 30, 2013.  (T. at 28.)   ALJ Flanagan denied Plaintiff's

application in a decision dated December 24, 2013.  (T. at 14.)  The ALJ's decision became the

final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

review on June 16, 2015.  (T. at 4.)  Plaintiff timely commenced this action in the United States

District Court for the Northern District of New York on July 8, 2015.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the

> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.*

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-

Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

(quoting *Perez,* 77 F.3d at 46).

## B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado,* 805 F. Supp. at 153.  A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III.   THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since July 30, 2012.  (T. at 19.)  At step two, the ALJ found that Plaintiff had severe impairments consisting of degenerative disc disease of the spine, anxiety disorder, and depression.  *Id.*  He then found at step three that Plaintiff's impairments did not meet or medically equal the severity of listed impairments 1.00 (Musculoskeletal Disorder), 1.04 (Disorders of the Spine), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1").  (T. at 20.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that she was capable of performing the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  (T. at 21.)  The ALJ further concluded that Plaintiff retained the ability to "lift, carry, push or pull 10 pounds; can frequently lift, carry, push or pull less than 10 pounds; can stand or walk, in combination, for 2 hours total in an 8-hour workday with normal breaks; and can sit for 6 hours total in an 8-hour workday with normal breaks."  (T. at 22.)  He found that Plaintiff "is also able to understand, remember, carry out and make judgment on simple, detailed and complex matters.  She can maintain concentration and attention and make appropriate decisions.  The claimant can accept instructions from supervisors, work in tandem with co-workers and can greet and relate superficially with public but no negotiations, confrontation or responsibility for safety of others."  *Id*.

In support of his determination that Plaintiff was capable of performing sedentary work activities, the ALJ "accorded great weight" to the opinion of consulting examiner Elke Lorensen,

M.D. ("Dr. Lorensen") and considered the medical records from Dr. Nolan. (T. at 23, 25.) The ALJ noted that nowhere in his examination notes does Dr. Nolan "indicate any need for surgery, physical therapy, or any form of pain management." (T. at 23.)

At step four of the five-step analysis, the ALJ found that Plaintiff was not able to perform any of her previous relevant work as a cashier, stock person, mail handler, or waitress. (T. at 26.) However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* The ALJ further found that based on Plaintiff's RFC for the full range of sedentary work, Plaintiff's age, education, and work experience, a finding of "not disabled" was appropriate in consideration of Medical-Vocational Rule 201.28. *Id.*

## IV. THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ's determination of her RFC and subsequent designation of "not disabled" is not supported by substantial evidence due to the ALJ committing reversible error by failing to discuss within his decision all statements made by acceptable medical sources relating to Plaintiff's disability status. (Dkt. No. 10.) Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence, and thus should be affirmed. (Dkt. No. 7.)

## V. DISCUSSION

On this appeal, Plaintiff argues that the ALJ erred at step three in determining her RFC because his determination was not supported by substantial evidence. (*See generally* Dkt. No. 10.) The Court agrees and finds that the ALJ's RFC finding was not based on substantial

evidence due to the ALJ's failure to heed the treating physician rule, the ALJ's failure to develop the record, and the ALJ's erroneous view of the medical record in evaluating Plaintiff's credibility.

### A. Residual Functional Capacity

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. §§ 404.1546(c), 416.946(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* §§ 404.1545(a), 416.913(c). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(b), 416.969a(a).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 307 F. Supp. 2d at 440.

### B.     The Treating Physician Rule

Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence and the credibility of Plaintiff. The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. *See* 20 C.F.R. § 404.1527(c)(2). Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions. *Burgess v. Astrue*, 537 F.3d

117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

An ALJ who refuses to give "controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*,

362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell*, 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

The ALJ concluded the following regarding Plaintiff's RFC:

> The claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional non-exertional limitations. Specifically, the claimant can lift, carry, push or pull 10 pounds; can frequently lift, carry, push or pull less than 10 pounds; can stand or walk, in combination, for 2 hours total in an 8-hour workday with normal breaks; and can sit for 6 hours total in an 8-hour workday with normal breaks.

(T. at 5-6.)

As discussed above, in reaching this determination, the ALJ accorded great weight to consultative examiner Dr. Lorensen's opinion. (T. at 23.) Dr. Lorensen examined Plaintiff on

September 25, 2012, for her complaint of lower back pain.  (T. 285.)  He performed a physical examination where he noted no abnormalities in her gait, as well as no redness, heat, swelling, or effusion in her spinal region.  (T. at 287.)  He gave no opinion on her previously performed MRI.  (*See generally* T. at 285-88.)  His ultimate diagnosis was "back pain" with a prognosis of "fair."  (T. at 287.)  He opined "moderate restrictions in bending, lifting, and reaching."  *Id.*

The only acknowledgement of a treating physician made by the ALJ is where it was noted that the ALJ "considered the medical evidence of record including the records from claimant's treating physician . . . Dr. Nolan."  (T. at 25.)  Despite no indication of what weight, if any, the ALJ had afforded Dr. Nolan's opinion, the ALJ refers to Dr. Nolan as a "treating physician."  *Id.*  Yet, at that point Plaintiff had only seen Dr. Nolan once.  As the Commissioner correctly notes, the Second Circuit has held that a doctor who has only seen a patient a single time is not entitled to the "treating physician" designation.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983).

The ALJ subsequently fails to give due weight to any of the opinions of Plaintiff's actual treating physicians.  The ALJ does not mention whether he took Dr. Battista or SOS's opinions into account, or what weight he accorded them if he did, despite Dr. Battista having seen Plaintiff six times (T. at 361-78) and SOS having seen Plaintiff thrice.  (T. at 274-80.)  In addition to their extensive relationship with Plaintiff, both providers were specialists and therefore entitled to further deference.  20 C.F.R. § 404.1527(c)(2)-(6).  SOS specialized in orthopedics, and Dr. Battista specialized in pain management. (T. at 38.)

Here, the ALJ not only failed to give any consideration or seek further clarification as to

the treating physicians' recommendations, but also failed to give any reasons for not crediting the opinion of Plaintiff's treating physicians. Plaintiff has two medical care providers with whom she consistently treated: SOS and Dr. Battista. (T. at 274-78, 361-77.) As mentioned above, Plaintiff was seen by specialists at SOS three times in August of 2012. (T. at 274-280.) Plaintiff was seen by Dr. Battista six times, spanning August 2012, to July 2013. (T. at 361-77.) Despite Plaintiff's numerous prior visits with the specialists, the ALJ omitted any mention of a reason for according consulting examiner Dr. Lorensen's opinion "great weight" over that of Plaintiff's treating physicians. (T. at 23.)

In fact, the ALJ failed to discuss a note written by Dr. Battista recommending that Plaintiff "limit walking, standing, squatting, and bending." (T. at 365.) As Defendant notes, "moderate limitations in bending cannot reasonably, let alone compellingly, be interpreted as precluding sedentary work." (Dkt. No. 12 at 9; *see* SSR 96-9p, 1996 WL 374185, at *8.) Therefore, the ALJ was under an affirmative duty to seek clarification as to whether the treating physician's restrictions on bending were, in fact, a "moderate" limitation the likes of which would not preclude sedentary work or whether the restriction was of a more extensive nature that could potentially preclude such work. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'").

The Court further notes that the ALJ failed to make any mention of or note an inquiry into the limitations prescribed by Dr. Battista, including his instructions to limit "walking" and

"standing." (T. at 365.) This is especially significant as "walking" and "standing" are activities which the ALJ specifically found the Plaintiff is able to perform "in combination, for 2 hours total in an 8-hour workday" as part of her RFC. (T. at 22.)

Additionally, the ALJ does not give any indication as to the weight accorded to SOS's objective findings. While the ALJ correctly notes that physical examinations performed by SOS "revealed no evidence of impingement" and showed "no instability or significant degenerative change of clinical relevance" the ALJ fails to note SOS found that "examination of the lumbar spine shows significant irritation to palpation and reduced movement." (T. at 279.) The ALJ also fails to discuss the results of the MRI performed at SOS which showed there was a "hypertrophic facet degenerative change present" as well as "early degenerative disc change with slight disc bulging." (T. at 277.) SOS further recommended a "pain management evaluation for spinal injection" which is also not noted by the ALJ. (T. at 275.) As the ALJ does not acknowledge portions of SOS's objective findings and does not explain what weight, if any, was given to the findings he does acknowledge, there is no way to evaluate whether or not SOS was given its due deference as a treating physician and as a specialist in orthopedics.

###    C.    The ALJ's Affirmative Duty to Develop the Record

The ALJ has a duty to affirmatively develop the administrative record in light of the non-adversarial nature of a benefits proceeding, regardless of whether the claimant is represented by counsel. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations omitted). This includes a duty to contact treating and other medical sources to clear gaps in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The duty of an ALJ to develop the record is "particularly

important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. *Id*. at 80 (citing *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). This must be done before an ALJ can reject a treating physician's diagnosis. *Id*. The Secretary's regulations "state that '[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make every reasonable effort help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d) (emphasis added); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Moreover, "a treating physician's 'failure to include . . . support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'" *Rosa*, 168 F.3d at 80 (quoting *Clark*, 143 F.3d at 118).

A scant record reveals a host of lost opportunities for the ALJ to develop the facts of the case before rejecting a finding of disability. *Rosa*, 168 F.3d 72, 80 (finding that by forgoing opportunities to develop the record and rejecting the treating physician's medical assessment, the ALJ committed legal error). An ALJ should not base his conclusions on incomplete information that is conclusive of very little. *Id*.

However this must be weighed against the fact that the claimant bears the burden at the first four steps and must sufficiently demonstrate that her impairments meet the definition of a disability. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d

41, 46 (2d Cir. 1996)).

Where there are gaps in the record the court has remanded for further development of the evidence. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). "Remand is particularly appropriate where . . . we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" *Id.* (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). In other situations where the Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, the court has opted to remand for a calculation of benefits. *Rosa*, 168 F.3d at 83.

There is a clear inadequacy in the record as it pertains to the imminence of Plaintiff's spinal surgery at the time of the ALJ hearing. At the beginning of the hearing, Plaintiff's counsel requested that the ALJ leave the record open for "a couple of weeks" in order for counsel to submit medical records from Dr. Nolan pertaining to Plaintiff's upcoming surgery. (T. at 31.) The ALJ declined to wait for subsequent medical records, instead holding the record open only for the medical records from the initial consultation on September 26, 2013, on the assumption that "if it's clear she's going to have the surgery, I think that will be apparent in the consult." *Id.*

Clearly Plaintiff's imminent surgery was not evident from the consultation, as the ALJ noted that "Dr. Nolan did not indicate any need for surgery, physical therapy or any form of pain management." (T. at 23.) Yet, Plaintiff did indeed undergo spinal surgery performed by Dr. Nolan on December 17, 2013. (T. at 424.)

At the very least, the ALJ had the option of holding the record open long enough for records from Plaintiff's October 31, 2013, appointment to be submitted. That appointment was

to finalize the exact procedure, and records from it would have allowed the ALJ to make a more informed decision about the existence and extent of any upcoming surgery.

Barring that, when the ALJ realized that the medical records from the consultation with Dr. Nolan lacked any reference to surgery, the ALJ could have contacted Dr. Nolan to verify Plaintiff's testimony that she would be undergoing spinal surgery within the next few months. With such a clear discrepancy between Plaintiff's claims of imminent surgery and no mention of any such surgery in Dr. Nolan's report, the ALJ had an affirmative duty to contact Dr. Nolan and clear up the gap in the record regarding the existence and necessity of Plaintiff's upcoming surgery.

**D.** **Credibility Assessments by the ALJ**

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted). In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account. 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. This finding does not involve a

determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about her pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen,* 2014 WL 1289575, at *4 (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . ., [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. §§ 423(d)(5)(A); 20 C.F.R. § 404.1529(b); SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (internal quotations omitted) (citation omitted); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, at *5 ("One strong indicator of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the

intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 50.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p, at *5. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve pain or symptoms; (5) other treatment received to relieve pain or symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain or symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'" *Lewis*, 62 F. Supp. 2d at 651 (quoting

*Gallardo v. Apfel*, Civ. No. 96-9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)

(citing *Aponte*, 728 F.2d at 591-92; *Ferraris*, 728 F.2d at 587). "A finding that a [claimant] is

not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review

of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make

credibility findings regarding claimant's critical testimony undermines the Secretary's argument

that there is substantial evidence adequate to support his conclusion that claimant is not

disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and

other evidence." *Id.* at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in

light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are

supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675

F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great

deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621

(JSR) (FM), 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F.

Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718 (MBM), 1998 WL

430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a

claimant's credibility . . . and such findings are entitled to deference because the ALJ had the

opportunity to observe the claimant's testimony and demeanor at the hearing.").

Here, the ALJ has relied on an erroneous interpretation of the medical record in an effort

to poke holes in Plaintiff's credibility.  The ALJ's determination of Plaintiff's credibility hinges on his misreading of key parts of the medical record, and therefore his credibility determination is not supported by substantial evidence.

For example, the ALJ finds Plaintiff's statements to be "somewhat inconsistent, not substantiated by corroborative evidence".  (T. at 25.)  He further claims to have found "multiple inconsistencies in the claimant assertions."  *Id*.  Yet many of these alleged inconsistencies are actually the ALJ's own inconsistent and erroneous reading of the record.

The ALJ first notes that Plaintiff claims she is going to undergo back surgery.  *Id*.  The ALJ notes this as an inconsistency because despite his "thorough review of all the medical records in the file" the ALJ found no indication that surgery was an option that was ever considered.  *Id*.  As noted above, this inconsistency could have been resolved either by leaving the record open for subsequent reports from Dr. Nolan, or by the ALJ contacting Dr. Nolan to verify Plaintiff's claims.  However, this inconsistency could have also been resolved by perhaps a more thorough "thorough review" of the record.  Dr. Battista, the aforementioned treating physician who saw Plaintiff six times, had twice mentioned sending Plaintiff to obtain a surgical consultation.  (T. at 361, 377.)  On August 21, 2012, Dr. Battista made a recommendation that "if the injections fail, I will consider a surgical consultation."  (T. at 365.)  Almost a year later, on July 19 2013, after Plaintiff had undergone the injections and obtained limited to no relief, Dr. Battista noted that "[a]t this time I am going to refer the pati[e]nt out for a lumbar surgical consultation with Dr. Nolan . . . ."  (T. at 378.)  The ALJ's first assertion of inconsistencies in the record, the divide between Plaintiff's claim of imminent surgery and the ALJ's inability to

reconcile this with any mention of surgery in the record, could have easily been resolved in Plaintiff's favor by either contact with Dr. Nolan or a more thorough review of Dr. Battista's records.

The ALJ relies on other troubling mischaracterizations of the record in discrediting Plaintiff. The ALJ notes that "[a]ccording to the medical evidence of record, the claimant did attend physical therapy however, she only went two times." (T. at 25.) What the ALJ omits or fails to note is that the record indicates that when Plaintiff returned for her second physical therapy appointment she told the physical therapist that after the first appointment she was "sore" and "puking because of the pain" and the therapist noted that Plaintiff had "very poor tolerance to any exercises." (T. at 270.) This is further noted in Plaintiff's medical records from SOS, from an appointment five days after her second physical therapy appointment, where under "Chief Complaint" the record notes that "[physical therapy] increases pain, making her vomit." (T. at 274.) The ALJ wrongly highlights Plaintiff's discontinuation of physical therapy as an indication of a lack of credibility. The Second Circuit has previously held that "[j]ust because a claimants disability went untreated does not mean he was not disabled." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000). Here, it cannot be credibly alleged that Plaintiff went untreated, only that she discontinued one type of treatment after it worsened her symptoms. Plaintiff never made any claims contrary to the record as it pertains to her physical therapy, and the ALJ's notation of it in an attempt to impugn Plaintiff's credibility is unwarranted.

The ALJ also notes inconsistencies between the number of injections Plaintiff claims to have received for her back and the number of injections present in the medical record. (T. at 25.)

The ALJ claims that "[a]t the hearing, the claimant testified that she received five epidural steroid injections. However, according to the medical evidence, the claimant only received two injections." *Id.* The ALJ's claim mischaracterized Plaintiff's testimony. During the hearing, Plaintiff testified only that Dr. Battista performed "five injections." (T. at 38.) She never specifically mentions that those injections were steroid injections. *Id.* Based on the record, it is unclear whether Plaintiff is counting each individual injection of a joint during a single procedure. What is clear is that between August 12, 2012, and July 19, 2013, Plaintiff underwent three injection procedures: two lumbar epidural injections and a facet injection. (T. at 377.) Each procedure was performed upon Plaintiff's left L4/5 and L5/S1 lumbar region. (T. at 373, 375.) If Plaintiff was counting each individual entry of a needle into her lumbar region as an injection, she had received six. If the ALJ was counting each injection procedure, she had received three. Either way, the inconsistency in the ALJ's application of the records and the mischaracterization of Plaintiff's testimony during the hearing results in the ALJ's findings of credibility as unsupported by substantial evidence.

Lastly, in the final paragraph evaluating Plaintiff's assertions, the ALJ erroneously claims that "despite the claimant's allegations and sworn testimony, there is not one medical source statement regarding any physical or mental limitation." The ALJ is correct in that there is "not one medical source", as there are in fact two medical sources in the record supporting Plaintiff's claim of physical limitations. Consultative examiner Dr. Lorensen opined that "there are moderate restrictions in bending, lifting, and reaching." (T. at 287.) Additionally, as previously mentioned, Plaintiff's treating physician Dr. Battista had indicated that Plaintiff should "limit

walking, standing, squatting, and bending." (T. at 365.) Due to the numerous inconsistencies, not in Plaintiff's testimony but rather in the ALJ's interpretation of the record, the ALJ's credibility determination is not supported by substantial evidence.

## VI.    CONCLUSION

It is not the province of this Court to evaluate the evidence anew, only to evaluate whether the ALJ's decision was supported by substantial evidence. Here it was not. The ALJ erred by not heeding the treating physician rule since he gave more weight to a consulting examiner over physicians who had treated her multiple times. The ALJ also failed in his affirmative duty to develop the record by not clarifying a major discrepancy between Plaintiff's claim of imminent spinal surgery and a lack of any indication of surgery in Dr. Nolan's medical examination notes. The ALJ's finding of credibility cannot be considered to be based on substantial evidence either, due to the multiple inaccuracies on which he relied when forming his credibility determination. Accordingly, the Court recommends that this matter be remanded for further administrative proceedings consistent with the above.

**WHEREFORE**, it is hereby

**RECOMMENDED** that this matter be **REMANDED** to the Commissioner of Social Security, pursuant to sentence four of 42 U.S.C. § 405(g),[2] for further consideration.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

---

[2] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated:  July 15, 2016
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge